*534 MR. JUSTICE MORRISON,
specially concurring:
I concur in the result but dissent from the rationale.
The majority opinion states:
“It is also undisputed in the case at bar that the defendant’s right to privacy was violated.”
I disagree.
The Montana Constitution provides:
“The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.” 1972 Montana Constitution, Article II, Section 10.
In a series of cases referred to in the majority opinion this Court has held that the privacy provision of the Montana Constitution proscribes private action as well as government action. Such an interpretation finds support in the position articulated by one delegate at the Montana Constitutional Convention but, in my opinion, is not supported in the language of the privacy section itself.
Historically constitutions have been documents securing to private citizens certain fundamental rights against governmental intrusion. Constitutions should not regulate the conduct among the various private interests in our society. Such interests should be competed for in the political forum.
Constitutional rights, which protect against the awesome power of the State, are embedded to granite tablet. Once declared, these fundamental rights remain secure unless successfully attacked by a cumbersome constitutional amendment process. This process of amendment has never produced a restriction of rights. Once initially constitutionally rooted these fundamental declarations have become permanent.
In my view, the rights and obligations among our people should be fought for at the ballot box, lobbied for in the legislative process, and clarified through litigation arising and culminating in the judicial branch. Competing concerns of private individuals are not entitled to constitutional per *535 manency, but should be continually grappled with in a political forum where majority rule decides.
The 1972 Montana Constitution expressly proscribes private action in the human rights provision. 1972 Montana Constitution, Article II, Section 4. The delegates chose not to refer to private action in the privacy section. The courts should be reluctant to extend constitutional provisions beyond their stated purpose when the effect of such extension runs contrary to historical precedent and limits constitutionally the free action of private individuals.
The interpretation indulged by the majority results in greater restriction for the individual than for the State. Government action invading privacy can be justified where a compelling state interest is shown. If the privacy intrusion is committed by an individual, seldom, if ever, could a compelling state interest be demonstrated. The result would be to allow the State more freedom of movement than would be allowed any private citizen. I cannot believe this accords with constitutional intent.
The right to be free from undue meddling by anyone should properly be the subject of legislative action. Such privacy matters have been treated legislatively, i.e., credit reports are covered in Title 31, Chapter 3, MCA. Likewise, statutes protect against disclosure of a host of subject including medical records, insurance information, accident reports, and information given to privileged sources. This writer feels that in this day of computerization and electronic eavesdropping more legislative attention should be directed toward protecting individual citizens from uninvited outside intrusion. The public policy questions inherent in such legislative action should be debated and resolved by the political structure. The constitution inhibits government, not private citizens.
The strongest support for the majority decision involves application of the exclusionary rule on the basis of the “silver platter doctrine.” As the majority notes, this doctrine prohibited the federal government from using evidence ob *536 tained illegally by state officers. At the time of the decision articulating the “silver platter doctrine” the Fourth Amendment to the United States Constitution did not apply to state officers and therefore, there was not a constitutional basis for excluding evidence which these officers obtained through illegal means. The evidence was handed by state officers to federal officers on a “silver platter.” No illegal act was committed by federal officials in gathering the evidence. The exclusionary rule was applied by the United States Supreme Court though there could be no constitutional invasion by the state officers. The United States Supreme Court held that the evidence would be excluded because the federal prosecution, in using evidence illegally obtained by the State, became a lawbreaker and bred contempt for the law itself. As pointed out in the majority opinion, the United States Supreme Court in Elkins said in part:
“If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means — to declare that the government may commit crimes in order to secure the conviction of a private criminal — would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face.” (Citations omitted.) 364 U.S. at 223, 80 S.Ct. at 1447, 4 L.Ed.2d at 1681.
In Coburn, also cited by majority, Mr. Justice Daly very logically noted:
“. . .[Unreasonable or illegal intrusions knowingly accepted and used, from the private sector by the government amount to an extension of the silver platter doctrine condemned by Elkins, particularly when viewed in the light of judicial integrity emphasized in Elkins.” (Emphasis in original) 165 Mont. at 503, 530 P.2d at 450.
If the “silver platter doctrine” is to be recognized for the purpose of excluding evidence obtained by private individuals then, in my opinion, it should be confined to instances *537 where the evidence was obtained in violation of criminal statutes thereby rendering the evidence “illegal.” In this way judicial integrity is preserved by not judicially blessing the fruits of illegal activity. Such an application of the exclusionary rule, as a rule of court procedure, would prevent the State from relying upon the illegal conduct of a private citizen.
My position is thus being modified from that articulated in State v. Hyem (1981), Mont., 630 P.2d 202, 38 St.Rep. 891 (Mr. Justice Morrison, dissenting). In my judgment, only the State can violate the constitutional right of privacy of an individual. Nevertheless, if a private individual violates the penal statutes of this State and thus obtains evidence subsequently offered against an accused, the exclusionary rule should be applied to deny such tainted evidence admission. Therefore, I would vote to grant suppression of the evidence obtained in this case.
I concur with the majority in remanding.
MR. JUSTICE WEBER concurs in the opinion of MR. JUSTICE MORRISON.